#27514-a-GAS

2017 S.D. 38

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

The People of the State of South Dakota in the
Interest of A.K.A.-C., Minor Child and
Concerning B.W. and H.A.-C., Respondents.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN W. ENG
Judge

\* \* \* \*

CREIGHTON A. THURMAN
Yankton, South Dakota                    Attorney for appellant Mother
                                         B.W.


ANN M. HOLZHAUSER
Special Assistant Attorney General
Department of Social Services
Pierre, South Dakota                     Attorneys for appellee State of
                                         South Dakota.


HEATHER LACROIX
Yankton, South Dakota                    Attorney for appellee child.

\* \* \* \*

CONSIDERED ON BRIEFS
ON APRIL 24, 2017
OPINION FILED 06/21/17

#27514

SEVERSON, Justice

[¶1.]      B.W., Mother, appeals the circuit court's termination of her parental rights. She alleges that the court improperly considered evidence from her participation in drug court and that termination was not the least restrictive alternative. We affirm.

## Background

[¶2.]      This case is the third abuse and neglect (A&N) case since 2012 involving Mother and Child. Child, who was two years old at the time, first came into custody of the Department of Social Services (DSS) in March 2012, after Mother was brought to an emergency room for an overdose and placed on a mental health hold. During the first proceedings, Mother agreed to participate in the 24/7 program and provide samples for urinalysis. At that time, Mother had planned to return to Michigan after custody was returned to her. Custody was eventually returned to Mother, and the court ordered that DSS notify the Michigan Department of Human Services, Child Protection that the two were returning to Michigan.

[¶3.]      Child next came into DSS custody in December 2012. On December 14, 2012, Mother contacted DSS, advising them that she lacked housing and employment. She had been turned away from shelters. DSS discussed foster care for Child, but Mother wanted to contact friends before making a decision. On December 16, 2012, one of Mother's coworkers contacted the police department because Mother had left Child with him. Four days prior, she asked him to watch Child for a few hours but did not return. Mother's coworker reported that he did

-1-

not know Mother well and he had to purchase clothes and diapers for Child. When Mother still did not return the next day, the coworker contacted DSS and brought Child to the DSS office. A urinalysis from Mother on December 25, 2012, tested positive for methamphetamine and amphetamine. She admitted that she had injected crystal meth.

[¶4.] Over the course of the second A&N case, Mother repeatedly tested positive for drugs. Throughout 2013, she was terminated from treatment programs at Glory House and the Human Services Center. In January 2013, she was arrested for second-degree burglary; forgery; identity-theft; petty theft; possession of: marijuana, drug paraphernalia, a controlled substance, and a forged instrument; and grand theft. Judge Eng presided over the criminal matter and these A&N proceedings. Mother pleaded guilty to possession of a controlled substance and possession of a forged instrument. In July 2013, she was placed on probation, but she violated its conditions. She tested positive for methamphetamine, amphetamine, and opiates. In October 2013, Mother was placed on intensive probation supervision and her sentence included a condition of successful completion of the drug court program.

[¶5.] For a time, Mother seemed to be taking advantage of services provided to her. On July 29, 2014, the circuit court returned full legal and physical custody of Child to Mother. The court noted at a dispositional hearing in April 2014, that Mother was receiving the maximum services available and those services were "cocooning" Mother so that Child was cared for and safe. Mother was participating in the Individualized and Mobile Program of Assertive Community Treatment

(IMPACT) program, receiving services from Lewis & Clark Behavioral Health, and participating in drug court.

[¶6.]  This latest A&N case began in October 2014, when Mother was taken into custody.  Mother failed a urinalysis and then absconded, missing drug court.  When she was located, she was under the influence of alcohol and drugs, and law enforcement took her into custody.  On November 12, 2014, Mother was terminated from drug court.  Because Mother's probation was conditioned on her successful completion of drug court, a violation report was filed with the court and a hearing on the violation was held on November 13, 2014.  Mother admitted to violating probation, and her probation was revoked.  The circuit court, with Judge Eng presiding over that matter as well, reinstated Mother's two-year sentence to the penitentiary.

[¶7.]  The circuit court held a final dispositional hearing in this A&N case on April 10, 2015, at which time the State sought termination of Mother's parental rights.  After the hearing, the circuit court determined "that the least restrictive alternative in keeping with the best interests of [Child] [was] the termination of parental rights."  This appeal followed, in which Mother asserts two issues for our review.  The first is whether the circuit court relied on evidence relating to drug courts, which she claims was inadmissible evidence under SDCL 16-22-6, to support its decision to terminate mother's parental rights.  Mother also asserts that there

was insufficient evidence to support its decision because the court relied on inadmissible evidence to support its decision to terminate her parental rights.[1]

## Analysis

[¶8.]        1.     *Whether the court erroneously interpreted SDCL 16-22-6 and allowed improper evidence to be admitted.*

[¶9.]        The circuit court took judicial notice of the first two A&N cases discussed above.  It also took judicial notice of Mother's 2013 criminal file.  Mother alleges that those files contain evidence in violation of SDCL 16-22-6 and that the court erroneously interpreted that statute.[2]  SDCL 16-22-6 provides:

> Nothing contained in this section may be construed to permit a judge to impose, modify, or reduce a sentence below the minimum sentence required by law.  No statement made by a drug court participant in connection with the court's program or directives, nor any report made by the staff of the court or program connected to the court, regarding a participant's use of controlled substances is admissible as evidence against the participant in any legal proceeding or prosecution.  However, if the participant violates the conditions or is terminated from drug court, the reasons for the violation or termination may be considered in sanctioning, sentencing, or otherwise disposing of the participant's case.

The statute does not operate to bar a dispositional court from considering the programs or services that drug court offered to Mother.

---

1.    In its responding brief, the State argues that the limitation of evidence in legal proceedings in SDCL 16-22-6 does not apply to A&N proceedings and particularly not to dispositional hearings.  The State did not raise this issue on a notice of review, and Mother does not address the question in her briefs.  Because we decide this appeal based on the particular evidence in this case, we do not address the applicability of SDCL 16-22-6 to this question.

2.    Statutory interpretation is a question of law reviewed de novo. *See People ex rel. J.S.B., Jr.*, 2005 S.D. 3, ¶ 12, 691 N.W.2d 611, 615.

[¶10.]	Mother contends that the second A&N case (File No. 12-192) is "replete with testimony in violation of SDCL 16-22-6." But she identifies just one witness whose testimony she raises as improper. On January 28, 2014, a member of the drug court team, Lisa Ryken, testified at an adjudicatory hearing on File No. 12-192 that Mother "blew a .02 and law enforcement did a curfew check and then she was released the next morning and there was no - - - no sanctions made because after investigating and finding out what had gone on, it was deemed that it was not a drinking incident." Ryken clarified that Mother told Ryken that the .02 was from soaking Mother's dentures in an alcohol based solution.

[¶11.]	Regardless of whether Ryken's testimony was improper at the time it was received in the prior proceeding, Mother has not demonstrated error or prejudice in this case. Despite Mother's allegation that the court, in *this* case, "rel[ied] upon evidence obtained in violation of SDCL 16-22-6[,]" Mother has failed to identify a single finding of fact or conclusion of law that indicates that the circuit court based its decision on improper evidence. Because Mother does not identify what drug court evidence the circuit court erroneously admitted or what the court erroneously relied upon in making its decision, and because Mother has failed to identify a finding of fact or conclusion of law that indicates that the circuit court based its decision to terminate in this case on improperly admitted evidence under SDCL 16-22-6, we cannot say that the circuit court erred when it took judicial notice of the two previous A&N files and Mother's 2013 criminal file.

[¶12.]	By the time of this A&N proceeding, the circuit court had changed its interpretation of SDCL 16-22-6 from its interpretations in prior A&N proceedings

including Mother and Child. The court explained at the final dispositional hearing on April 10, 2015:

> The court is of the opinion that if a Drug court representative is called, the State is limited as to addressing whether the person was in the program and, if so, what the end result was. The court is limiting, to a certain extent, what can and cannot be addressed.
>
> If, however, there is evidence by the respondent that would address the participation, the court believes that that opens up the case and allows the State to then bring in more information, because the court believes that in doing so, the respondent has opened the door for additional information.

At the conclusion of the hearing, the court also stated that it made "note that the court does not delve into, specifically, all of the records of the drug court. The court feels duty bound pursuant to the statute, 16-22-6, to not delve into and second-guess the drug court." The court's later interpretation may have erroneously broadened what the statute prohibits because it does not appear that the court believed that the services provided to Mother by drug court could be addressed unless Mother introduced it.[3] SDCL 16-22-6 makes statements "regarding a participant's use of controlled substances" "made by the drug court participant in connection with the court's program" and "any report made by the staff of the court or program connected to the court regarding the participant's use of controlled substances" inadmissible "as evidence against the [drug court] participant in any legal proceeding or prosecution." It does not prohibit consideration of the services

---

3. At the April 2015 dispositional hearing, the State did ask Mother about the positive drug tests that she had towards the end of her participation in the drug court program. However, the court determined that the defense had opened the door to that line of questioning. Mother has not appealed that evidentiary ruling.

that a participant received in connection with the program. Furthermore, as addressed below, Mother has not demonstrated that the court's interpretation of the statute resulted in the court relying on improper evidence.

[¶13.]      2.      *Whether termination was the least restrictive alternative commensurate with the best interests of Child.*

[¶14.]      Under Mother's second issue, she asserts that the court "relied heavily" upon the drug court evidence and that without it there was insufficient evidence to support the court's determination. But she does not identify what drug court evidence was erroneously admitted that the court relied upon in making its decision. And the findings of fact and conclusions of law do not indicate that the court relied on any statement Mother made in connection with the drug court program or directives regarding her use of controlled substances or that it relied on a report made by the staff of the drug court or program regarding Mother's use of controlled substances. The court did find that Mother had been terminated from the drug court program and that she had been "provided as much assistance from drug court, IMPACT and other service providers as was available and she was unable to refrain from inappropriate use of controlled substances." However, the court's consideration of the fact that Mother was in the drug court program and received services through the drug court is not improper under SDCL 16-22-6. *See supra* ¶ 9.

[¶15.]      The circuit court judge in this matter was involved in the two prior A&N cases and a criminal case involving Mother; in all of those cases, she abused controlled substances. Many of those actions occurred before she was admitted to drug court, including the criminal conviction, which ultimately led to her two-year

penitentiary sentence. The record contains various reports to the court from DSS and from the court appointed special advocate. At the dispositional hearing, a DSS employee testified about her involvement in the case, and individuals who knew Mother through Narcotics Anonymous and Alcoholics Anonymous testified about concerning behavior they witnessed from Mother. It is clear that the court had relevant, admissible evidence before it regarding Mother's use of controlled substances.

[¶16.]     Mother also asserts that there was no testimony as to what reasonable efforts had been made or what options for reunification were available in this case. Mother's two-year incarceration limited DSS in its attempts to rehabilitate this family. *See Interest of S.H.E.*, 2012 S.D. 88, ¶ 22, 824 N.W.2d 420, 426 ("State concede[d] that DSS's efforts were limited, but contend[ed] it '[could]not be faulted for [Parent's] criminal choice which limited its ability to return the children'" and this Court agreed). DSS did provide for visitation, and the court made a specific finding on the services that were provided to Mother.[4] It found that reasonable efforts had been made to rehabilitate the family, and we cannot say that the court clearly erred in its finding.

[¶17.]     Lastly, Mother asserts that the court failed to take Mother's efforts and utilization of services into consideration, but she fails to identify which services the court failed to take into consideration. In light of her repeated drug use, drug

---

4.     The court found that the following services were provided to Mother: Initial Family Assessment, foster care services, visitation, transportation, Protective Capacity Assessment, Child Case Plan Assessment, medical services, relative searches, contact with drug court members, contact with Prison case manager, and contact with Mexican Consulate (Father is residing in Mexico).

court failure, and ultimate incarceration for a drug offense, we cannot say that the court clearly erred in determining that Mother "has been an addict and has been and will continue to be addicted to controlled substances" and that she "can only remain sober in an institution such as the South Dakota State Women's Prison." Nor can we say that the court erred in determining that termination of parental rights was the least restrictive alternative. The court found that Child had been out of Mother's care for the past three years due to Mother's chemical dependency. By the time that Mother would serve her penitentiary sentence, Child would have been in foster care for five years. Mother was offered substantial services and multiple chances to become an adequate parent. This Court has repeatedly explained that it will not force a child to wait for "parents to acquire parenting skills that may never develop." *People ex rel. D.T.*, 2003 S.D. 88, ¶ 23, 667 N.W.2d 694, 701. We affirm.

[¶18.] GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and WILBUR, Retired Justice, concur.